# In the United States Court of Federal Claims

No. 15-223 C

Filed: January 29, 2016

*******************************************
|  |  |
|---|---|
| ROBERTO CARABALLO and ALBERT E. MILLER, for themselves, and on behalf of all persons similarly situated, | Motion To Dismiss, RCFC 12(b)(1), RCFC 12(b)(6); Statute Of Limitations, 28 U.S.C. § 2501; Tucker Act, 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491. |
| Plaintiffs, |  |
| v. |  |
| THE UNITED STATES, |  |
| Defendant. |  |

*******************************************

**Chad Dwight Hanson**, Kilpatrick Townsend & Stockton, LLP, Winston-Salem, North Carolina, Counsel for the Plaintiffs.

**John Hugh Robertson**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND FINAL ORDER REGARDING THE GOVERNMENT'S MOTION TO DISMISS**

**BRADEN**, *Judge.*

I.   **RELEVANT FACTUAL BACKGROUND.**[1]

On March 17, 1997, Roberto Caraballo and other federal employees brought suit in the United States District Court of the Virgin Islands ("District Court") against the United States, the United States Postal Service, and the then-Director of the United States Office of Personnel Management ("OPM") James King. Compl. ¶ 9; *see also* Gov't Ex. A, at 1 (Complaint, *Caraballo v. United States*, No. 97-00027 (District of the Virgin Islands) (Mar. 17, 1997) ("*Caraballo I*")). The *Caraballo I* Complaint alleged that the Government paid the cost of living adjustment ("COLA") at rates lower than the levels required by law and failed to revise the COLA

---

[1] The relevant facts discussed were derived from: the March 3, 2015 Complaint ("Compl.") and attached exhibits ("Pl. Ex. 1–2"); and the Government's Exhibits ("Gov't Ex. A–I"), attached to the Government's July 1, 2015 Motion To Dismiss ("Gov't Mot.").

rates, as required by a prior settlement agreement. Compl. ¶ 9; *see also* Gov't Ex. A, at 4–8.

On June 16, 2000, the parties agreed to settle *Caraballo I* and negotiate a new settlement agreement ("Settlement Agreement"). Compl. ¶ 12. On August 17, 2000, the District Court entered an Order certifying a class action that included:

> [A]ll persons employed by the United States or an agency, establishment, or instrumentality thereof, or by a corporation owned by the United States, including the United States Postal Service, the Administrative Office of the United States Courts, the General Accounting Office, and Non-Appropriated Fund agencies, who are or were entitled to receive, or did receive, a non-foreign (territorial) cost-of-living allowance, or a like payment as part of or in addition to basic pay, pursuant to 5 U.S.C. § 5941, 5 C.F.R. §§ 591.201-213, and/or Executive Orders 10,000 and 11,137, or pursuant to other statute, regulation, administrative practice, or contract, at any time on or after October 1, 1990.

Pl. Ex. 2 (Aug. 17, 2000 Order), at 2.

The Settlement Agreement required the United States to pay $232.5 million to a trustee. Pl. Ex. 1 (Settlement Agreement), at ¶ 11. In addition, the Settlement Agreement required that OPM issue new regulations ("New Regulations") to set COLA rates at a level reflecting price surveys to be conducted by OPM every three years. Pl. Ex. 1, at ¶¶ 4, 8. The Settlement Agreement also provided that "it [was] expected, but not required . . . that the New Regulations [would] be consistent with the Conforming Methodology."[2] Pl. Ex. 1, at ¶ 10.2.1. The Settlement Agreement, however, provided: "If, at any time, OPM determine[d] that it no longer wishe[d] to be bound by the Conforming Methodology, it [was to] publish notice to the class members of its decision." Pl. Ex. 1, at ¶ 10.4.3. After OPM provided notice, it was free to issue non-conforming COLA regulations, but "[would] not incur any liability to the class members, either in damages or for equitable relief, of any kind or degree solely on the basis that any regulation or COLA rate at issue is not reasonably consistent with the Conforming Methodology." Pl. Ex. 1, at ¶ 10.4.3.

---

[2] The Conforming Methodology provides procedures and guidance on conducting price surveys. Pl. Ex. 1, at Safe Harbor Principles ¶¶ 1–26. The Settlement Agreement also refers to the Conforming Methodology as the Safe Harbor Principles. Pl. Ex. 1, at ¶ 10.2.1.

And, the Settlement Agreement established a Survey Implementation Committee ("SIC")[3] and a Technical Advisory Committee ("TAC").[4] Pl. Ex. 1, at ¶ 6, Safe Harbor Principles ¶ 24. The Settlement Agreement required OPM to develop and implement the New Regulations "in cooperation and consultation with" these committees. Pl. Ex.1, at ¶ 6.[5]

In or around April 2002, OPM drafted a legislative proposal that would "replace COLA over time at the rate of one locality pay[6] dollar for 65 cents of a COLA dollar" or by a "0.65 conversion factor." Compl. ¶¶ 26–27. The objective of the legislative proposal was to eliminate the COLA over time. Compl. ¶ 27. Congress, however, did not enact OPM's 2002 proposed legislation. Compl. ¶ 28.

On May 30, 2007, OPM proposed the "Locality Pay Extension Act of 2007." Compl. ¶¶ 29, 31. Under the Locality Pay Extension Act of 2007,

> COLA rates in effect on December 31, 2007 would be locked in place and OPM would no longer conduct COLA surveys as required by the Settlement Agreement. Beginning with the first pay period in January 2008, and continuing for a seven-year period, locality pay would be phased in for federal employees in the non-foreign areas at a rate of one locality pay dollar for every 85 cents of a COLA dollar.

Compl. ¶ 31.

---

[3] Members of the SIC included federal employees to "review the plans and methodology for the survey and provide to the appropriate OPM management official(s) advice or comments." Pl. Ex. 1, at Safe Harbor Principles ¶ 24B. "The SIC [would] continue to exist during the period from the date OPM issue[ed] final regulations to implement the settlement to the end of the first survey cycle in all COLA areas (*i.e.*, during the first 3 years of implementation of the [N]ew [R]egulations)." Pl. Ex. 1, at Safe Harbor Principles ¶ 24B. "At the end of the second phase, the SIC [would] dissolve and OPM [would] determine the nature and extent of prospective agency and collective bargaining representatives' involvement in the COLA program by issuing regulations." Pl. Ex. 1, at Safe Harbor Principles ¶ 24B.

[4] The TAC consisted of up to three members "to advise the SIC and appropriate OPM management official(s) during the First and Second Phases[,] as needed on economic and statistical issues relating to the COLA program." Pl. Ex. 1, at Safe Harbor Principles ¶ 25. "At the end of the Second Phase, the TAC [would] dissolve." Pl. Ex. 1, at Safe Harbor Principles ¶ 25.

[5] The August 17, 2000 Order also approved the Settlement Agreement and provided that the District Court would "retain exclusive and continuing jurisdiction . . . for purposes of supervising, administering, implementing, enforcing, construing and interpreting the Settlement [Agreement][.]" Pl. Ex. 2, at 5.

[6] Locality pay is based on the local costs of living as measured by the local costs of labor. Compl. at 7 n.1. The COLA is based on comparative living costs measured through consumer price surveys. Compl. at 7 n.1.

In support, OPM wrote a letter to the Vice President and circulated to federal employees a PowerPoint Presentation entitled "Non-Foreign Area Cost of Living Allowance (COLA) Transformation" to garner support for the Locality Pay Extension Act of 2007.  Compl. ¶¶ 29–30.  Again, Congress did not enact the 2007 proposed legislation.  Compl. ¶ 31.

On October 28, 2009, the Non-Foreign AREA Act of 2009 was enacted, as part of the National Defense Authorization Act For Fiscal Year 2010, Pub. L. 111-84 ("the 2009 Act").  Compl. ¶ 42.  The 2009 Act provided that

> [e]ach adjusted cost-of-living allowance rate . . . shall be computed by (i) subtracting 65 percent of the applicable locality-based comparability pay percentage from the cost-of-living allowance percentage rate in effect on December 31, 2009; and dividing the resulting percentage determined under (i) by the sum of—(I) one; and (II) the applicable locality-based comparability payment percentage expressed as a numeral.

The 2009 Act, Pub. L. 111-84, 123 Stat. 2620 (2009).

In short, the 2009 Act reduced the COLA by 65% of the locality pay received.  *See* OFFICE OF PERSONNEL MANAGEMENT, NO. 10-102 BENEFITS ADMINISTRATION LETTER, NON-FOREIGN AREA RETIREMENT EQUITY ASSURANCE (APRIL 9, 2010).  But, "[b]y 2012, employees working in non-foreign areas[7] [would] receiv[e] the full locality pay."  *Id*.

On September 30, 2010, OPM published interim regulations on the locality pay program ("2010 Interim Regulations") in the *Federal Register*.  Compl. ¶ 45 (citing 75 FED. REG. 60285 (2010)).  The 2010 Interim Regulations, effective as of November 1, 2010, provided that "good cause exist[ed] for waiving the general notice of proposed rulemaking.  Notice is being waived to comply with the intent of Congress[.]"  75 FED. REG. 60285–86 (2010).  The 2010 Interim Regulations placed non-foreign areas in the Rest of U.S. locality pay area ("RUS"), establishing separate locality pay areas for Hawaii and Alaska.  Compl. ¶ 45 (citing 5 FED. REG. 60285 (2010)).  Public comments on the 2010 Interim Regulations were invited to be submitted by November 29, 2010.  Compl. ¶ 47.

On November 26, 2010, the *Caraballo I* class counsel submitted a comment objecting to the 2010 Interim Regulations, stating that OPM's actions violated the terms of the Settlement Agreement.  Gov't Ex. F, ECF Doc. No. 7-2, 20–25.  Although the TAC was not consulted, on December 29, 2010, Dr. Harold Watts, a TAC member, informed OPM that the TAC was available to advise OPM on the 2010 Interim Regulations.  Compl. ¶ 49.  OPM never responded.  Compl. ¶ 49.

On June 7, 2011, OPM published a Notice, "rejecting all of the comments and suggestions submitted by the *Caraballo* Class and others."  Compl. ¶ 50 (citing 76 FED. REG. 32859 (2011)).

---

[7] Non-foreign areas "are States, commonwealths, territories, and possessions of the United States outside the 48 contiguous United States[.]"  5 C.F.R. § 591.205.

The Notice provided that the 2010 Interim Regulations would be adopted as a "final rule, with minor changes[.]"  76 FED. REG. 32859 (2011)).

## II. PROCEDURAL HISTORY.

### A. In The District Court.

On April 20, 2012, Plaintiffs filed a Motion For Leave To File Complaint For Breach Of Settlement Agreement in the District Court.  Gov't Ex. E, at 1 (Plaintiff's Motion For Leave, *Caraballo I*, No. 97-00027 (District of Virgin Islands) (April 20, 2012)).  On September 13, 2012, the District Court denied the April 20, 2012 Motion, because "a final judgment has been entered in this matter . . . . Generally, a complaint may not be amended after the entry of judgment." Gov't Ex. G, at 2 (Order, *Caraballo I*, No. 97-00027 (District of the Virgin Islands) (Sept. 13, 2012) (internal citations omitted)).  On January 30, 2015, the District Court ordered "that this case is CLOSED."  Gov't Ex. H, at 1 (Order, *Caraballo I*, No. 97-00027 (District of the Virgin Islands) (Jan. 30, 2015)).

### B. In The United States Court Of Federal Claims.

On March 3, 2015, Plaintiffs filed suit in the United States Court of Federal Claims designating Roberto Caraballo and Albert E. Miller as the potential class representatives.  The March 3, 2015 Complaint was brought on behalf of themselves, the class of individuals certified by the District Court in *Caraballo I*, and all other persons within the definition of the *Caraballo I* class.  Compl. ¶ 4.  The March 3, 2015 Complaint contained two counts: (1) breach of the Settlement Agreement; and (2) breach of the express and implied covenant of good faith and fair dealing.  Compl. ¶¶ 66, 73.

On July 1, 2015, the Government filed a Motion To Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  On September 2, 2015, Plaintiffs filed an Opposition To The Government's July 1, 2015 Motion To Dismiss ("Pl. Opp.").  On October 16, 2015, the Government filed a Reply ("Gov't Reply").  On November 2, 2015, Plaintiffs filed a Motion To File Sur-Reply, which the court granted.  Plaintiffs filed a Sur-Reply ("Pl. Sur-Reply").  On November 3, 2015, the Government filed a Response To Plaintiffs' Motion For Leave To File A Sur-Reply.

## III. DISCUSSION.

### A. Jurisdiction.

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]"  *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of jurisdiction over the subject matter[.]").  When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all

reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

### 1. Whether The Settlement Agreement Is Money-Mandating.

#### a. The Government's Argument.

The Government argues that the court does not have jurisdiction to adjudicate the claims in the March 3, 2015 Complaint, because the Government is no longer liable for monetary damages under the Settlement Agreement. Gov't Mot. at 5. Paragraph 11 of the Settlement Agreement provides that "[a]fter the [Government] make[s] payment of the Judgment Amount to the [t]rustee, the United States . . . [would] face[] no further monetary liability in this case." Gov't Mot. at 5, 9 (citing Pl. Ex. 1, at ¶ 11).

The Government adds that the two damages clauses in the Settlement Agreement do not provide the court with jurisdiction. Gov't Mot. at 25. Paragraph 10.4.2 states, "If . . . a court of competent jurisdiction rules in a final judgment that the regulations or COLA rate at issue violates applicable laws, then the United States may be liable for damages or equitable relief as determined by the court." Pl. Ex. 1, at ¶ 10.4.2; *see also* Pl. Ex. 1, at ¶ 10.4.3 (same). The Government interprets these clauses to mean that, if the United States acts illegally, only then it would be liable for money damages. Gov't Mot. at 25. The March 3, 2015 Complaint, however, does not allege that the Government's actions—the passage of the 2009 Act and OPM's 2010 Interim Regulations—"actually violated any 'applicable laws.'" Gov't Mot. at 25. "Given the lack of any monetary claim, . . . the only potential claim available . . . pursuant to the terms of the Settlement Agreement is a declaratory judgment claim[.]" Gov't Mot. at 25. Because the United States Court of Federal Claims does not have jurisdiction to issue a declaratory judgment, the court does not have jurisdiction over the claims alleged in the March 3, 2015 Complaint. Gov't Mot. at 31.

#### b. Plaintiffs' Response.

Plaintiffs respond that paragraph 11 of the Settlement Agreement provides that the Government is not liable for monetary damages for acts prior to the date of the Settlement Agreement. Pl. Opp. at 11. Paragraph 11, however, does not apply to a breach of the Settlement Agreement. Pl. Opp. at 11–12. Nor does the Settlement Agreement disavow monetary damages sought as relief in the March 3, 2015 Complaint. Pl. Opp. at 15.[8]

The United States Court of Federal Claims also has jurisdiction over the March 3, 2015 Complaint, because the Settlement Agreement is money-mandating. Pl. Opp. at 10. "[T]here is a presumption that a breach of contract claim against the [G]overnment *necessarily* includes a claim

---

[8] The Government replies that Plaintiffs' interpretation conflicts with Paragraph 3 of the Settlement Agreement. Gov't Reply at 5. Paragraph 3 provides: "Pursuant to this settlement, the [G]overnment will pay certain amounts of compensation and issue new regulations governing the COLA program. If the [G]overnment's actions *in the future* are consistent with this [Settlement], and with the Conforming Methodology . . . the [G]overnment will be protected against *further liability*[.]" Pl. Ex. 1, at ¶ 3(emphasis added).

for damages." Pl. Opp. at 10 (citing *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (holding that damages are presumed unless the "contract expressly disavow[s] money damages.")). In fact, the Settlement Agreement "*expressly* provides for money damages in the event it is breached." Pl. Opp. at 13. Paragraphs 10.4.2 and 10.4.3 provide: "If, however, a court of competent jurisdiction rules in a final judgment that the regulations or COLA rate at issue violates applicable laws, then the United States may be liable for *damages*[.]" Pl. Opp. at 13 (citing Pl. Ex. 1, at ¶¶ 10.4.2, 10.4.3). Plaintiffs interpret these provisions to mean that, if the Government violates "applicable law," then it is liable for money damages. Pl. Opp. at 13. Applicable law includes the terms of the Settlement Agreement. Pl. Opp. at 13.[9]

### c. The Court's Resolution.

The United States Court of Federal Claims has jurisdiction, under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400. And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

The United States Court of Appeals for the Federal Circuit has held that damages are presumed in breach of contract actions, unless the "contract expressly disavow[s] money damages." *Holmes*, 657 F.3d at 1314; *see also Lutz v. U.S. Postal Serv.*, 485 F.3d 1377, 1381 (Fed. Cir. 2007) (recognizing that "[a] settlement agreement is a contract[.]"). Paragraph 11 of the Settlement Agreement provides that once OPM paid the trustee $232.5 million, "the United States

---

[9] The Government replies that a breach of contract is not a violation of law. Gov't Reply at 11.

. . . [would] have no further monetary liability *in this case*." Pl. Ex 1, at ¶ 11 (emphasis added). Although the court interprets paragraph 11 as relieving the Government from further monetary liability in the *Caraballo I* litigation, paragraph 11 does not disavow money damages for the Government's breach of other Settlement Agreement terms.

It is true that the District Court retained jurisdiction over the Settlement Agreement, but the United States Court of Appeals for the Federal Circuit has held that, even if a settlement agreement is incorporated into a judicial decree, the United States Court of Federal Claims has exclusive jurisdiction over breach of contract claims exceeding $10,000. *See VanDesande v. United States*, 673 F.3d 1342, 1346 (Fed. Cir. 2012) ("[I]f the United States is a party to a contract that the Government is alleged to have breached, and the claim is for more than $10,000, the exclusive forum for the suit is in the [United States] Court of Federal Claims[.]"). In that case, the United States Court of Appeals for the Federal Circuit recognized that federal courts may not unilaterally divest or abrogate the Tucker Act's grant of jurisdiction to the United States Court of Federal Claims. *See id.* at 1350 ("If, however, a settlement agreement was no longer enforceable as a contract once incorporated into a consent decree, the effect would be to divest the [United States] Court of Federal Claims of its Tucker Act jurisdiction by the simple act of a court . . . . We are unaware of any act of Congress that would allow for such an outcome.").

For these reasons, the court has determined that it has jurisdiction over the claims alleged in the March 3, 2015 Complaint.

### 2.   Whether The Statute Of Limitations Precludes Adjudication Of The March 3, 2015 Complaint.

#### a.   The Government's Argument.

The Government argues that the statute of limitations has run on the claims in the March 3, 2015 Complaint. Gov't Mot. at 7, 42. The United States Court of Federal Claims has a six-year statute of limitations. *See* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition . . . is filed within six years after such claim first accrues."). Although some of the claims concern actions in 2009 and 2010, outside the statute of limitations period, "[P]laintiffs also appear to set forth claims that concern the period before March 2009." Gov't Mot. at 42 (citing Compl. ¶¶ 25–39). "[T]o the degree that [P]laintiffs' claims concern any such breaches before March 3, 2009, those claims should be dismissed . . . as barred by the statute of limitations." Gov't Mot. at 42.

#### b.   Plaintiffs' Response.

Plaintiffs respond that, although some claims alleged in the March 3, 2015 Complaint commenced after the statute of limitations, these claims nevertheless are timely under the continuing claims doctrine. Pl. Opp. at 34. This doctrine provides that "a defendant that owes a continuing duty to another party gives rise to a new, separate cause of action each time it breaches that duty." Pl. Opp. at 34 (citing *Bank of Am., FSB v. United States*, 51 Fed. Cl. 500, 511 (2002), *aff'd sub nom., Bank of Am., FSB v. Doumani*, 495 F.3d 1366 (Fed. Cir. 2007). OPM's actions "are all part of a related and on-going effort to eliminate Plaintiffs' benefit under the Settlement

Agreement, an effort that has included actions well within the six-year statute of limitations period." Pl. Opp. at 34.

Plaintiffs' November 4, 2015 Sur-Reply adds that the "claims are premised on the passage of the [2009] Act and its corresponding regulations—all of which occurred after March 3, 2009." Pl. Sur-Reply at 11. Therefore, Plaintiffs are not seeking money damages for OPM's alleged breaches before March 3, 2009.

### c. The Court's Resolution.

In *Friedman v. United States*, 159 Ct. Cl. 1 (1962), the United States Court of Claims recognized that the continuing claims doctrine applied to cases where:

> (a) Congress had not entrusted an administrative officer or tribunal with the determination of the claimant's eligibility for the particular pay he sought; (b) the cases turned on pure issues of law or on specific issues of fact which the court was to decide for itself (i.e., Congress had not established any administrative tribunal to decide either the factual or the legal questions); and (c) in general the cases called upon the court to resolve sharp and narrow factual issues not demanding judicial evaluation of broad concepts such as 'disability' (concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion). For such cases—in which no administrative agency has been set up to decide the claim, and the court passes de novo on all issues of law and fact—the 'continuing claim' doctrine is wholly appropriate . . . . And where the payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim upon which suit can be brought.

*Id.* at 7.

As such, the continuing claims doctrine applies to cases where recurring payments are required. The only payment that the Settlement Agreement required was a one-time lump-sum of $232.5 million. Pl. Ex. 1, at ¶ 11. The Settlement Agreement does not require recurring payments. Therefore, the continuing claims doctrine is not applicable in this case.

For these reasons, the court has determined that it does not have jurisdiction over OPM's actions from 2002 to 2007, because they are precluded by the Tucker Act's statute of limitations. The court, however, does have jurisdiction over claims alleged in the March 3, 2015 Complaint with respect to OPM's actions from March 3, 2009 to the present.

### 3. Whether The District Court's September 13, 2012 And January 30, 2015 Orders Have *Res Judicata* Effect.

### a. The Government's Argument.

The Government argues that *res judicata* "bars all claims that were or could have been raised as part of an earlier litigation that resulted in a final decision." Gov't Mot. at 35 (citing *Nevada v. United States*, 463 U.S. 110, 129–30 (1983) ("[W]hen a final judgment has been entered

. . . it is a finality as to the claim or demand in controversy . . . not only as to every matter which was offered[,] . . . but as to any other admissible matter which might have been offered[.]"). Plaintiffs filed identical claims in the District Court in 2012 and that court issued a final judgment on the merits on September 13, 2012. Gov't Mot. at 38–41.

Under the Tucker Act, a federal district court has jurisdiction over government contract claims that do not exceed $10,000. Gov't Mot. at 39. "[P]laintiffs failed to expressly indicate whether [their] claims exceeded $10,000 . . . . But the fact that they filed their claims in the [D]istrict [C]ourt indicates that plaintiffs and their attorneys were presumably alleging that their monetary claims *did not* exceed $10,000 per class member's claim[.]" Gov't Mot. at 40. Therefore, *res judicata* bars the court from adjudicating the claims in the March 3, 2015 Complaint and the court should grant the Government's July 1, 2015 Motion To Dismiss. Gov't Mot. at 41.

### b. Plaintiffs' Response.

Plaintiffs respond that *res judicata* is inapplicable here, because there was never a final judgment on the merits. Pl. Opp. at 29–30. Plaintiffs filed a Motion For Leave To File Complaint For Breach Of Settlement Agreement in *Caraballo I* in 2012 in the District Court. Pl. Opp. at 30. Although the District Court denied that motion, it "did not make any holdings regarding the merits of the claims the Plaintiffs hoped to bring; rather, the District Court simply held that the means by which Plaintiffs were attempting to raise the claims [were] not proper." Pl. Opp. at 30–31. Plaintiffs, however, acknowledge that, a denial of a motion to amend can have *res judicata* effect, "when the proposed amended claims are based on the same set of operative facts as the existing claims[.]" Pl. Opp. at 31. But, denial of a motion to amend does not have *res judicata* effect, if the motion is based on facts that take place after the date of the original complaint. Pl. Opp. at 32 (citing *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005) ("[A]s a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play.").

In this case, *res judiciata* does not apply, because the District Court determined that "a complaint may not be amended after the entry of judgment" and denied the Motion For Leave. Gov't Ex. G, ECF Doc. No. 7-2, 28. Therefore, the District Court did not assert jurisdiction over the underlying substantive claims alleged in the proposed complaint attached to the 2012 Motion For Leave. Pl. Opp. at 32.

### c. The Court's Resolution.

As a matter of law, *res judicata* applies when three elements are satisfied: "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003). In this case, the parties are identical. Here, the District Court never proceeded to a final judgment on the substantive merits of the 2012 Motion For Leave To File Complaint For Breach Of Settlement Agreement. Moreover, *res judicata* cannot apply to claims litigated in a court that does not have subject-matter jurisdiction. *See Int'l Philanthropic Hosp. Foundation v. United States*, 223 Ct. Cl. 587, 591 (1980) ("The Government itself recognizes that the issue presented to this court is whether a 'dismissal with prejudice,' by a court lacking subject matter jurisdiction over plaintiff's claim, will be recognized . . . as a bar to

further litigation. In the circumstances now presented, we are not disposed to give this dismissal order res judicata effect."). Because the United States Court of Federal Claims has *exclusive* jurisdiction over breach of contract claims against the Government that exceed $10,000 in damages, the District Court did not have jurisdiction over the underlying substantive claims in the proposed complaint.

For these reasons, the court has determined that, *res judicata* does not bar the court from adjudicating the claims in the March 3, 2015 Complaint.

### B. Whether The March 3, 2015 Complaint Fails To State A Claim.

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"). When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and then whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level." *Id.* at 555. The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Id.*

#### 1. The Government's Argument.

The Government argues that the March 3, 2015 Complaint fails to state a claim upon which relief can be granted, because OPM did not breach the Settlement Agreement. Gov't Mot. at 5, 32. The Settlement Agreement "repeatedly recognized that the United States would not be required to adhere in the future to the COLA payout percentages set forth in . . . the Settlement Agreement, but instead, could issue new statutes and regulations that departed from that COLA regime—without liability—as long as the United States provided notice of the departure." Gov't Mot. at 5.

Paragraph 10.2.1 of the Settlement Agreement provides that "OPM retains its discretion to issue or amend (or decline to issue or amend) any regulations as part of the New Regulations, or otherwise, provided that the manner and substance of its exercise of such discretion is consistent with applicable law." Gov't Mot. at 33 (quoting Pl. Ex. 1, at ¶ 10.2.1). Paragraph 10.2.1 also provides that "it is expected, but not required by this settlement, that the New Regulations will be consistent with the Conforming Methodology." Gov't Mot. at 33 (quoting Pl. Ex. 1, at ¶ 10.2.1).

In addition, paragraph 10.4.3 of the Settlement Agreement provides:

> If, at any time, OPM determines that it no longer wishes to be bound by the Conforming Methodology, it will publish notice to the class members of its decision. OPM may then revise its regulations or set COLA rates in a manner that is not consistent with the Conforming Methodology. If it does so, OPM will not incur any liability to the class members, either in damages or for equitable relief, of any kind or degree solely on the basis that any regulation or COLA rate at issue is not reasonably consistent with the Conforming Methodology.

Pl. Ex. 1, at ¶ 10.4.3.

OPM followed this procedure. Gov't Mot. at 34. "With the publication of its interim rule and its request for comments, OPM provided notice . . . *that it no longer intends to be bound by the Conforming Methodology*." Gov't Mot. at 34 (emphasis in original). Thus, OPM did not breach the Settlement Agreement and the March 3, 2015 Complaint fails to state a claim. Gov't Mot. at 35.

To the extent that Plaintiffs argue that OPM breached the duty of good faith and fair dealing, such a breach requires that a plaintiff show "animus or bad intent." Gov't Reply at 19 (citing *Austin v. United States*, 118 Fed. Cl. 776, 790 (2014) ("[Plaintiffs must present] evidence of some specific intent to injure the plaintiff.")). The March 3, 2015 Complaint fails to state a claim, because it did not make that showing. Gov't Reply at 19–20.

### 2. Plaintiffs' Response.

Plaintiffs respond that the March 3, 2015 Complaint properly alleges two claims for relief: breach of the Settlement Agreement; and breach of the express and implied duty of good faith and fair dealing. Pl. Opp. at 16. With respect to the breach of the Settlement Agreement, paragraph 10.4.3 required OPM to give notice to the *Caraballo I* class if, "it no longer wishe[d] to be bound by the Conforming Methodology[.]" Pl. Ex. 1, at ¶ 10.4.3. "[P]ublication in the *Federal Register* is a far cry from OPM specifically notifying Plaintiffs themselves." Pl. Opp. at 28 (emphasis added). Moreover, "when [OPM] issued its interim rule, the publication explicitly noted that it was *waiving* notice." Pl. Opp. at 29 (citing 75 FED. REG. 60,285–86 (Sept. 30, 2010) ("Notice is being waived to comply with the intent of Congress[.]")). "To be sure, the [G]overnment could now publish notice that it no longer intends to be bound by the Conforming Methodology. But this does not negate the fact that up until the point the [G]overnment publishes this notice, the current regulations are in breach and Plaintiffs are entitled to compensation for this breach." Pl. Opp. at 29. In addition, paragraph 6 of the Settlement Agreement required OPM to develop regulations "in cooperation and consultation with the [SIC] and with any other committees established under Safe Harbor Principle 24[.]" Pl. Ex. 1, at ¶ 6. OPM did not consult with these committees. Pl. Opp. at 29.

With respect to the breach of the duty of good faith and fair dealing, the March 3, 2015 Complaint alleges that "by enacting the [2009 Act]—which eliminated COLA—and OPM's implementation of corresponding regulations—which applied the Act's elimination of COLA,"

the Government was in breach. Pl. Opp. at 16. "The implied duty of good faith and fair dealing is part of every contract, including those with the [G]overnment." Pl. Opp. at 17 (citing *Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1365 (Fed. Cir. 2009) (The implied duty "imposes on a party . . . the duty . . . to do everything that the contract presupposes should be done by a party to accomplish the contract's purpose.")). Plaintiffs add that "[t]here is no question that the [G]overnment has the power to enact legislation that abrogates or modifies existing contracts, including the Settlement Agreement. However, despite its sovereign power, the [G]overnment is still liable for such actions." Pl. Opp. at 18.

Moreover, the 2009 Act's elimination of the COLA "deprived Plaintiffs of the very object and basis of their bargain under the Settlement Agreement." Pl. Opp. at 20. "[T]he [2009] Act was specifically targeted at Plaintiffs and the benefits they received under the Settlement Agreement." Pl. Opp. at 20. The 2009 Act "only affects federal employees working in non-foreign areas and receiving COLA payments, *i.e.*, Plaintiffs." Pl. Opp. at 21. "While [paragraph] 10.2.1 does afford the [G]overnment some discretion regarding keeping the COLA program in compliance with the Conforming Methodology, the duty of good faith and fair dealing tempers the exercise of that discretion." Pl. Opp. at 22.

The Government also violated the duty of good faith and fair dealing through OPM's actions prior to the 2009 Act by making "misleading and inaccurate public statements regarding the effect the [2009] Act would have on federal employees in the non-foreign areas, as well as a failure to notify any congressional committee members of the Settlement Agreement and its obligations during Congress's deliberations of the Act." Pl. Opp. at 23–25. After the passage of the 2009 Act, OPM also did not abide by the Settlement Agreement "when it published its initial 'interim' rules on September 30, 2010, or its final adoption of these rules[,]" because OPM did not take into account any of the factors in the Settlement Agreement's Safe Harbor Principles. Pl. Opp. at 25–26. Instead, the 2010 Interim Regulations compare non-federal pay levels in the non-foreign area to the RUS locality pay area. Pl. Opp. at 26. These breaches decreased the pay for federal employees in the non-foreign areas. Pl. Opp. at 26. For example, "[b]y placing both Guam and the U.S. Virgin Islands into the RUS locality pay area—which covers areas such as Wyoming and Montana—Guam and the U.S. Virgin Islands will receive a locality pay rate of only 14.16%." Pl. Opp. at 26–27.

   **3.**   **The Court's Resolution.**

     **a.**   **Regarding The Breach Of The Settlement Agreement Claim.**

The March 3, 2015 Complaint alleges that OPM breached the Settlement Agreement by: (1) changing regulations, without providing Plaintiffs adequate notice; (2) developing and implementing regulations, without consulting the SIC and/or TAC; (3) and departing from the Conforming Methodology. Compl. ¶ 67(a)–(c).

First, the Settlement Agreement required that "[i]f, at any time, OPM determine[d] it no longer wishe[d] to be bound by the Conforming Methodology, it [would] publish notice to the class members of its decision." Pl. Ex. 1, at ¶ 10.4.3. The United States Court of Appeals for the Federal Circuit has held that "[t]he publication of rules and regulations in the *Federal Register* gives legal notice of their contents to those subject to, or affected by, them, regardless of actual

knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance." *Higashi v. United States*, 225 F.3d 1343, 1349 (Fed. Cir. 2000) (internal quotations omitted). Therefore, OPM provided adequate "notice to the class members" by publishing the 2010 Interim Regulations in the *Federal Register*. *See* 75 Fed. Reg. 60285–86 (2010). In addition, the November 26, 2010 comment submitted to OPM by the *Caraballo I* class counsel evidences that Plaintiffs received actual notice. Gov't Ex. F, ECF Doc. No. 7-2, 20–25.

Second, paragraph 6 of the Settlement Agreement provides:

> The development, implementation, and revision of the New Regulations, and the implementation of this [S]ettlement in all other respects, shall be undertaken and conducted by OPM in good faith in accordance with the principles contained in Exhibit A [Safe Harbor Principles] and in cooperation and consultation with the [SIC] and with any other committees established under Safe Harbor Principle 24 of Exhibit A.

Pl. Ex. 1, at ¶ 6.

Therefore, if OPM failed to cooperate and consult with the SIC and TAC, OPM would be in breach. As a matter of law, however, "[n]ot every departure from the literal terms of a contract is sufficient to be deemed a material breach of a contract requirement." *Stone Forest Indus., Inc. v. United States*, 973 F.2d 1548, 1550 (Fed. Cir. 1992); *see also id.* at 1551 ("the determination depends on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties."). Whether a breach is material is a mixed question of law and fact. *See Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1369 (Fed. Cir. 2005). The United States Court of Appeals for the Federal Circuit held in *Gilbert v. Dep't of Justice*, 334 F.3d 1065 (Fed. Cir. 2003):

> A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract. Under this formulation, the determination of whether non-compliance with the terms of a contract is material, so as to constitute a breach, is a mixed question of fact and law. What was required by way of contract performance turns on contract interpretation which is an issue of law.

*Id.* at 1071–72 (citations omitted).

In this case, the principal benefit Plaintiffs bargained for in the Settlement Agreement was a lump-sum payment to satisfy backpay claims prior to October 1, 1990. Pl. Ex. 1, at ¶ 11. Therefore, failure to consult the SIC and/or TAC before issuing the 2010 Interim Regulations was not a material breach as it did not go to the "essence of the contract."

Third, paragraph 10.2.1 of the Settlement Agreement provides that "it is expected, *but not required* by this settlement, that the New Regulations will be consistent with the Conforming Methodology." Pl. Ex. 1, at ¶ 10.2.1 (emphasis added). Paragraph 10.4.3 also provides that, "If, at any time, OPM determines it no longer wishes to be bound by the Conforming Methodology, it will publish notice . . . . OPM may then revise its regulations or set COLA rates in a manner that

is not consistent with the Conforming Methodology." Pl. Ex. 1, at ¶ 10.4.3. OPM gave notice by publishing the 2010 Interim Regulations in the *Federal Register*. *See* 75 FED. REG. 60285–86 (2010). Therefore, OPM did not breach the Settlement Agreement by departing from the Conforming Methodology.

For these reasons, the court has determined that the March 3, 2015 Complaint fails to state a claim for breach of the Settlement Agreement.

### b. Regarding The Breach Of The Duty Of Good Faith And Fair Dealing Claim.

The March 3, 2015 Complaint also alleges that OPM breached the duty of good faith and fair dealing in five ways: (1) developing and implementing the New Regulations, without giving proper notice to the *Caraballo I* class; (2) developing and implementing the New Regulations, without consulting and cooperating with the SIC and/or TAC; (3) departing from the Conforming Methodology and eliminating the COLA pay; (4) lobbying Congress, members of the public, and members of the *Caraballo I* class from 2002 to 2007 to pass legislation that phased out COLA; and (5) failing to utilize its rulemaking authority to avoid, mitigate, or rectify the effect of the 2009 Act. Compl. ¶¶ 73–74.

The United States Court of Appeals for the Federal Circuit has held that a breach of the duty of good faith and fair dealing does not require a plaintiff to prove specific targeting or specific bad intent. *See Metcalf Const. Co., Inc. v. United States*, 742 F.3d 984, 993 ("[S]pecific targeting is not a general requirement."). But, "[t]he implied duty of good faith and fair dealing is limited by the original bargain: it prevents a party's acts or omissions that . . . are inconsistent with the contract's purpose and deprive the other party of the contemplated value." *Id*. at 991. In this case, Plaintiffs did not bargain for the COLA regulatory regime to be maintained in perpetuity. Pl. Ex. 1, at ¶ 10.4.3 ("If, at any time, OPM determines that it no longer wishes to be bound by the Conforming Methodology, it will publish notice to the class members of its decision."). Instead, Plaintiffs bargained for a one-time lump-sum payment to satisfy backpay claims prior to October 1, 1990 and a Conforming Methodology that OPM was "expected, but not required" to follow when determining COLA. Pl. Ex. 1, at ¶¶ 10.2.1, 11. Therefore, OPM did not violate the "original bargain" by departing from the Conforming Methodology and changing the New Regulations. Moreover, OPM did not breach the duty of good faith and fair dealing by lobbying Congress to adopt a different pay regime.

For the reasons previously discussed, OPM's notice, failure to cooperate and consult with the SIC and TAC, and departure from the Conforming Methodology do not rise to a material breach of the "original bargain."[10] The March 3, 2015 Complaint also does not properly state a claim with respect to OPM's alleged failure to exercise its rulemaking authority to mitigate any new legislation's effect on the Settlement Agreement. The Settlement Agreement neither requires

---

[10] In addition, once OPM provided notice that it no longer intended to be bound by the Conforming Methodology, OPM no longer needed to consult with the SIC and/or TAC. *See* Pl. Ex. 1, at Safe Harbor Principles ¶¶ 7–8, 10–11, 15–16, 19, 22A, 24–26.

nor implies that OPM exercise its rulemaking authority in this manner.  In fact, paragraph 10.2.1 states that "OPM retains its discretion to issue or amend (or decline to issue or amend) any regulations as part of the New Regulations . . . .  [I]t is expected, *but not required* by this [S]ettlement, that the New Regulations will be consistent with the Conforming Methodology."  Pl. Ex. 1, at ¶ 10.2.1 (emphasis added).  The "original bargain" of the Settlement Agreement did not provide Plaintiffs with a veto over OPM's rulemaking authority.

For these reasons, the court has determined that the March 3, 2015 Complaint fails to state a claim for breach of the duty of good faith and fair dealing.

### IV.  CONCLUSION

For the aforementioned reasons, the Government's July 1, 2015 Motion To Dismiss is granted.  Plaintiffs' prayer for relief for class certification is denied as moot.

**IT IS SO ORDERED**.


                                                                     s/ Susan G. Braden
                                                                    **SUSAN G. BRADEN**
                                                                    **Judge**